## DRUSILLA HUDLEY v. THE STATE.

### No. 4380. Decided March 14, 1917.

**1.—Assault to Murder—Insufficiency of the Evidence.**

Where, upon trial of assault with intent to murder, the evidence showed that the assaulted party, while an officer, was not making an arrest or attempting to do so, but ordered the defendant from the street, and that she replied in a displeasing manner to him, whereupon he slapped her with his hand, knocked her down and choked her, and while they were on the ground defendant cut the officer with a knife in the face, this did not sustain a conviction for assault to murder. Following Skidmore v. State, 43 Texas, 93, and other cases. Prendergast, Judge, dissenting.

**2.—Same—Verbal Provocation—Rule Stated.**

A verbal provocation does not justify an assault and battery under the circumstances mentioned in the statute. Following Timon v. State, 34 Texas Crim. Rep., 363.

**3.—Same—Evidence—Threats.**

Where, upon trial of assault with intent to murder, the State was permitted to introduce testimony to show that the defendant bought the knife with which the assault was made and remarked to the purchaser at the time that she wanted a knife that was a rib-getter or a man-getter, which she denied. Held, that this, if it was a threat, was too general to individuate the party assaulted. Prendergast, Judge, dissenting.

Appeal from the District Court of Brazos. Tried below before the Hon. J. C. Scott.

Appeal from a conviction of assault with intent to murder; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Hudson & Hudson,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of threats of defendant: Simms v. State, 10 Texas Crim. App., 131.

DAVIDSON, Presiding Judge.—Appellant was convicted of assault to murder and allotted two years confinement in the penitentiary.

The facts may be thus briefly stated: Appellant was a negro woman, and, doubtless, a prostitute. On Saturday night, the 13th of the month, she was sitting in a restaurant, and a negro man also sitting by her had his feet in her lap. The assaulted party, Conlee, who was city marshal of Bryan, ordered her away. She said to him that it looked as if he had it in for her. The next Saturday night, the 20th of the month, she was standing upon the sidewalk, as testified by Conlee, or in the door of the house, as testified by herself. Conlee came up the street and ordered her away. He says she muttered something that he did not understand, but did understand her to say it seemed to her that he had it in for her. He slapped her with his hand upon the face, and then knocked her down and choked her pretty badly. Some of the witnesses say she got up and he again jerked her down, and while they were on the ground, some of the testimony shows she cut him with a knife in the face. Other witnesses testified that she cut him when they arose from the street, and when they arose they had each other by the front or breast. Conlee jerked his pistol and struck her on the head two or three times. She says that he did that before she fell the first time. There is some difference as to when this occurred, but all agree that it occurred, and Mr. Conlee so testifies himself. He testified that he slapped her and knocked her down and choked her. She bought this knife, under some of the testimony, between the first meeting between Conlee and herself on the 13th and the second meeting on the 20th. Other testimony shows she bought it a week prior to the first meeting. The party from whom she bought the knife stated that she said she wanted a good keen knife that "was a rib getter or a man getter." This is denied by appellant. She says she paid 85 cents for the knife, and the seller of the knife testified it was a good knife and that appellant paid 85 cents for it. She says she got the knife for fear of a certain negro woman with whom she had had trouble, and some of the evidence shows she and another negro woman had had a fight and the owner of the premises ordered the other woman away. There is testimony also to the effect that she had the knife with her on this occasion to make a negro man take her to the country that night; that he had disappointed her, and that if she came across him she purposed to make him take her by bullying him with the knife. This is a sufficient statement of the case.

We are of opinion this evidence does not sustain a conviction against

this woman for assault to murder. The statute, article 1015, Revised Penal Code, provides that, "In all the cases mentioned in the preceding article, where violence is permitted to effect a lawful purpose, only that degree of force must be used which is necessary to effect such purpose," and under this article Mr. Branch in his Annotated Penal Code cites authorities to the effect that, if an officer in making an arrest uses excessive force he is guilty of an assault, citing Skidmore v. State, 43 Texas, 93; Skidmore v. State, 2 Texas Crim. App., 20; Pilcher v. State, 32 Texas Crim. Rep., 557. But it will be noted in this instance the officer was not making an arrest or attempting to make an arrest. He ordered the woman from the street. She replied in a manner not pleasing to him, that she thought he had it in for her, and he slapped her. This disposes of the question of attempting to arrest.

Article 1016 of the Penal Code reads this way: "No verbal provocation justifies an assault and battery, but insulting and abusive words may be given in mitigation of the punishment affixed to the offense." Mr. Branch cites the following authorities to sustain the proposition that a verbal provocation does not justify an assault and battery under the circumstances mentioned in the statute, and cites Welborn v. State, 24 S. W. Rep., 651; Timon v. State, 34 Texas Crim. Rep., 363. It is more than questionable if the language used by the woman could be considered as insulting conduct. Her reply did not justify his assault, and such assault being on a female might be an aggravated assault. Besides this, he knocked or jerked her down once, maybe twice, and choked her quite severely. To this Mr. Conlee testifies himself. She so testifies practically as did other bystanders and eyewitnesses. There was no separation or abandonment of the difficulty, but it was continuous. To put it as strong as possible for the State, had she killed him it could not have been more than manslaughter. There were adequate causes. There was a slap in the face and choking of the woman by the assaulted party, and then a beating over the head with a pistol. Strongly is self-defense put by this testimony. It is true Mr. Conlee was city marshal, and as such officer it was his duty to prevent violations of the law, and if this woman was doing those things on the street that were forbidden by law he should have arrested and taken her before the court, but this he did not do, nor did he so undertake. He made an assault and the woman defended. He was the aggressor. The evidence is not sufficient. The judgment will be reversed.

There is another question reserved by bill of exceptions. Appellant objected to the statements of the witness who sold appellant the knife wherein she stated that she wanted a knife that "was a rib getter or a man getter." The witness testified he did not recollect the exact language, but that was the substance of it. She denied this. If this was a threat, or to be so treated, it did not individuate or point out Mr. Conlee. There was nothing in the statement at the time to indicate that she had him in mind, but the threat was very general. She speaks of a woman who she was afraid of, and a negro buck, as she

calls him, with whom she might have a difficulty, etc. It is unnecessary to repeat this. Unless the testimony upon another trial can individuate and point out that this meant or was intended to apply to Conlee, it should be excluded. The authorities seem to be practically, as the writer understands them, one way on this question.

Viewing the case as we do as presented from the record, the judgment ought to be reversed, and it is hereby ordered to be reversed and the cause remanded for another trial.

*Reversed and remanded.*

PRENDERGAST, JUDGE (dissenting).—I think it is evident Judge Davidson has entirely misapprehended both the facts and the law applicable thereto in this case. He states and discusses some of the testimony only, and especially only that part of appellant's herself and some of the other witnesses, which if it had been believed by the jury, might have justified her acquittal or finding her guilty of a lesser offense. All that, however, was for the jury and lower court and not for this court. They are made the exclusive judges of the credibility of the witnesses and the weight to be given their testimony.

The trial judge in apt and correct charges, which were in no way objected to by appellant, submitted every issue raised at all by the evidence, submitting self-defense, aggravated and simple assault and reasonable doubt in her favor, and reasonable doubt between degrees of offense. The jury did not believe her claimed self-defense theory, which was directly disputed by the State's evidence. They believed from all the evidence and beyond a reasonable doubt, as the testimony was fully sufficient to establish, that she assaulted Mr. Conlee, the city marshal, with the intent to kill him and not in self-defense, nor under such circumstances as to reduce her offense to either aggravated or simple assault.

The testimony of the clerk who sold appellant the knife with which she assaulted and very seriously cut and attempted and intended to kill Mr. Conlee was clearly admissible. This testimony was amply sufficient to show that she bought the knife with which she attempted to kill Mr. Conlee for the very purpose she used it for. The testimony shows that appellant was a prostitute—a street walker—and attempted to ply her vocation by solicitation on the public streets of Bryan, especially on Saturday nights. On Saturday night, May 13th, just one week before she assaulted and attempted to kill Mr. Conlee, he, in the discharge of his duty, found her sitting in the door of one of the restaurants in Bryan with a negro buck sitting by her with his legs across her lap. Mr. Conlee properly told her to get up and get out of sight when indulging in that conduct. This incensed her—made her mad. She at once went to a hardware store, and as the clerk who waited on her swore, she told him she wanted to buy a keen, sharp knife, "a rib getter" or "a man getter." And she then and there bought such a knife. That was the very knife with which she assaulted and attempted

to kill Mr. Conlee just one week later, which was the first time she had seen him since the Saturday night before. Undoubtedly the facts would show, and clearly justify the jury to believe, that she bought that knife for the very purpose of using it on Mr. Conlee the first occasion she had, and she did so. This testimony was clearly admissible for the purpose of showing her animosity and hostility, and the extent of it against Mr. Conlee when she attempted to kill him. If it could be considered as a threat even, it was clearly admissible under the authorities. Hiles v. State, 73 Texas Crim. Rep., 17, and authorities there cited.

It is needless to further give the testimony, to discuss the questions or cite authorities.

This case should have been affirmed, not reversed.